**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL K. NELSON,

        Plaintiff,

vs.                                          Case No. 3:10-cv-1118-J-37MCR

UNITED STATES SECRETARY OF
HOUSING AND URBAN DEVELOPMENT,

        Defendant.

_____

**ORDER**

This case is before the Court on the following:

1. Defendant's Motion to Dismiss Amended Complaint and Memorandum in Support Thereof (Doc. No. 17), filed on May 13, 2011;

2. Plaintiff's Response to Defendant's Motion to Dismiss Amended Complaint and Memorandum in Support Thereof (Doc. No. 18), filed on May 27, 2011; and

3. Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (Doc. No. 22), filed on June 27, 2011.

**BACKGROUND**

Plaintiff brought this lawsuit to set aside a foreclosure sale of a property that he allegedly owned. (Doc. No. 14, ¶¶ 2-8.) Unfortunately for all involved, foreclosure cases have become a significant burden on Florida's state courts, which have hundreds of thousands of cases pending before them. *See* Roger Bull, *Trimmed-Down Version of Florida's Foreclosure Court to Remain in Service*, Fla. Times-Union (Jacksonville), May 24, 2011, *available at* 2011 WLNR 10336977 (noting the "more than 300,000 pending

foreclosure cases" in Florida at the time of publication).  Far fewer foreclosure cases end up in federal court.

## The Single Family Mortgage Foreclosure Act

This case is before the Court because the United Stated Department of Housing and Urban Devolvement ("HUD") held a mortgage on Plaintiff's property. (Doc. No. 17, Ex. D.)  Pursuant to the Single Family Mortgage Foreclosure Act of 1994, 12 U.S.C. § 3751, *et seq.*, HUD may use a non-judicial process to foreclose on such mortgages.  Congress enacted the Single Family Mortgage Foreclosure Act so that HUD would have a uniform foreclosure remedy separate and apart from those remedies provided by State law. *Id.* § 3751.  The foreclosure remedy envisioned by Congress is entirely non-judicial; it is concise and efficient; and the discretion to use it is exercised solely by the Secretary of HUD.[1]  *Id.* §§ 3751(a)(5), 3753.

If the borrower breaches a covenant or condition in the mortgage agreement, HUD may direct a designated "foreclosure commissioner" to file and serve a "Notice of Default and Foreclosure Sale" and commence a non-judicial foreclosure sale.  12 U.S.C. §§ 3755(a), 3756, 3757.  Service is loosely defined under the Act.  The notice is "deemed duly given upon mailing, whether or not received by the addressee and whether or not a return receipt is received or the notice is returned."  *Id.* § 3758(2)(C).

So long as the commissioner complies with a few statutory requirements, the

---

[1] Indeed, the Single Family Mortgage Foreclosure Act contemplates the use of its non-judicial foreclosure procedure in the very circumstances which confront Florida's court system today.  Congress enacted this law to provide HUD with a way to bypass state foreclosure remedies if backlogs began clogging state court dockets.  *See* 12 U.S.C. § 3751(a)(5) ("Congress finds that . . . providing the Secretary with a nonjudicial foreclosure procedure will reduce unnecessary litigation by removing any foreclosures from the courts if they contribute to overcrowded calendars.").

2

foreclosure commissioner may proceed with the foreclosure sale at the place and time designated in the notice. *See id.* § 3758(a) (prescribing the location, manner and time for foreclosure sales). The foreclosure commissioner has wide discretion to proceed with, cancel, or adjourn the foreclosure sale. *Id.* § 3760. Once a foreclosure sale is complete, the foreclosure commissioner distributes the proceeds of the sale, *id.* § 3762, transfers title to the property to the purchaser, *id.* § 3763, and records the foreclosure and sale in the official property records of the county in which the property is located, *id.* § 3764.

The final, recorded documents contain statements which, by statute, are *prima facie* evidence of "(1) the date, time, and place of the foreclosure sale; (2) that the mortgage was held by the Secretary . . .; (3) the particulars of the foreclosure commissioner's service of the notice of default and foreclosure sale in accordance with [the Act]; (4) the date and place of filing the notice of default and foreclosure sale; (5) that the foreclosure was conducted in accordance with the provisions of [the Act] and with the terms of the notice of default and foreclosure sale; and (6) the sale amount." *Id.* The sale is also conclusive. The Act bars all claims upon or with respect to the property sold for (1) any person to whom the notice was mailed, (2) any person claiming any interest in the property subordinate to that of the mortgage if that person had actual knowledge of the foreclosure sale, (3) any person claiming any non-recorded interest in the property which arose before the filing date of the notice, and (4) any person claiming an interest in the property pursuant to a statutory lien or an encumbrance which arose after the filing of the foreclosed mortgage. *Id.* § 3765.

The Secretary's Foreclosure in this Case

The mortgage foreclosed by HUD in this case was originally executed by Richard

Meeks in favor of Allied Mortgage Capital Corp. (Doc. No. 14, Ex. D.) It was recorded on March 15, 1999. (*Id.*) The mortgage was immediately assigned to Wendover Funding Corp., which assignment was also recorded on March 15, 1999. (*Id.* Ex. E.) About six years later, on July 12, 2005, Wendover recorded an assignment of its interest in the mortgage to HUD in the Duval County property records. (*Id.* Ex. F.) The foreclosure commissioner mailed to Plaintiff, as well as Mr. Meeks and another individual, Notices of Default and Foreclosure Sale for the property. (*Id.* Ex. G.) The Notices were mailed on April 5, 2010, and recorded on April 12, 2010. (*Id.*) The commissioner held a foreclosure sale on May 19, 2010. (*Id.*) HUD purchased the property at the sale. (*Id.*)

### Plaintiff's Allegations of Ownership

Plaintiff claims to own the foreclosed property. (*Id.* ¶ 3.) He alleges he received title to the property from Mr. Meeks in 2007. (*Id.* ¶ 4.c.) The deed evidencing this transfer was recorded on February 23, 2007. (*Id.* ¶ 4.c, Ex. C.) According to Plaintiff, HUD did not have an interest in the property at the time it foreclosed because its mortgage was paid in full. (*Id.* ¶ 6.a.) A satisfaction of mortgage is attached to Plaintiff's Amended Complaint, but that document is not, as Plaintiff contends, related to the mortgage foreclosed on by HUD. (*See id.* Ex. H.) Rather, the Satisfaction of Mortgage relates to a second mortgage on the same property, involving the same parties, and recorded the same day as the first (now foreclosed) mortgage. (*See id.*)

### The Procedural History of this Action

Plaintiff brought a quiet title action against the Secretary of HUD on September 3, 2010, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. (Doc. No. 4, Ex. A.) HUD removed the action to this Court on September 7, 2011,

pursuant to Title 28 U.S.C. § 1442(a).  (Doc. No. 1.)  With leave of Court, Plaintiff filed an Amended Complaint on March 29, 2011.  (Doc. No. 14.)

HUD now moves to dismiss Plaintiff's Amended Complaint.  (Doc. No. 17.)

## APPLICABLE STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Thus, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.

In considering a motion to dismiss brought under Rule 12(b)(6), the facts alleged in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff.  *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).  Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## DISCUSSION

As one commentator notes, federal non-judicial foreclosure laws like the Single Family Mortgage Foreclosure Act "combine the harshest features of foreclosure processes currently in existence under state laws" and "provide the least protection to defaulting borrowers in comparison with the laws in each of the fifty states."  Debra Pogrund Stark, *Foreclosing on the American Dream: An Evaluation of State and Federal Foreclosure Laws*, 51 Okla. L. Rev. 229, 241 (1998).  The list of "no's" associated with federal non-

5

judicial foreclosure processes is breathtaking. "The laws provide no requirement for a commercially reasonable sale, no post-sale redemption rights, no protection against deficiency judgments, no judicial process to ensure that the lender is indeed entitled to the remedy of foreclosure for the amount claimed, and a conclusive presumption that the sale is valid, and only eighteen days to reinstate the loan and twenty-one days to redeem the loan after the notice of default and sale is sent." *Id.*

Besides lacking basic protections for borrowers, the Single Family Mortgage Foreclosure Act provides no means by which an innocent property owner – one who may find himself swept up in the process perhaps by mistake – can challenge a foreclosure sale. That owner must turn to other statutes to try to make out a claim. When the United States holds title to the property, the statute that provides a remedy is the Quiet Title Act ("QTA").

HUD contends that this case should be dismissed because it was not properly brought pursuant to the QTA, which is the exclusive means by which a person may bring a claim challenging the United States' title to real property. Plaintiff contends that he brought this suit against the Secretary, not the United States. Plaintiff also contends that his claims are distinguishable from those in *Block v. North Dakota ex rel. Bd. of Unv. & Sch. Lands*, 461 U.S. 273 (1983), which the Court determined to fall within the QTA.

<u>The United States is the Proper Party</u>

After careful consideration of the submissions of the parties, the Court concludes that Plaintiff's claims are foreclosed by the Supreme Court's holdings in *Block*. In that case, which involved both a claim for declaratory judgment and a claim under the QTA, the Supreme Court squarely addressed and rejected the officer's-suit theory advanced by

6

Plaintiff in this case.[2]  *Id.* at 284-85.  The Court also held that the QTA was the exclusive means by which a property owner may challenge the United States' interest in real property.  *Id.* at 286.

### The United States' Sovereign Immunity

The QTA is the exclusive means to bring these types of claims because the United States, as a sovereign, cannot be sued at all without its consent.  *Id.* at 287; *see also Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996).  Congress provides such consent by passing statues that waive the United States' sovereign immunity.  "Only upon passage of the QTA did the United States waive its immunity with respect to suits involving title to land."  *Block,* 461 U.S. at 280.  When Congress "attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."  *Id.* at 287.

One condition imposed by the QTA is that claims challenging the United States' title

---

[2] Plaintiff attempts to distinguish his two claims by arguing his declaratory judgment claim "seeks a determination as to whether the mortgage held by the Defendant was foreclosed in compliance with applicable law." (*See* Doc. No. 18, p. 2.)  This argument is not persuasive.  Both of Plaintiff's claims, which are stated improperly in a shotgun-style pleading, are based upon the same alleged facts and seek the same remedy. (Doc. No. 14.)  These claims are to quiet title in the property.

Plaintiff's arguments regarding the Secretary as the proper party are also not persuasive.  As discussed by the Supreme Court in *Block*, an action against a federal officer with regard to real property can be maintained against the officer in his individual capacity only if (1) the officer acted outside his statutory powers, or (2) if the officer acted within his authorized powers, the exercise of such powers was constitutionally void.  *Block*, 461 U.S. at 281.  Plaintiff's claims in this case fit in neither category.  He does not claim that the Secretary acted outside his power, nor does Plaintiff contend the Single Family Mortgage Foreclosure Act is constitutionally void as applied in this case.  As such, the United States is the defendant against whom Plaintiff should have brought his claims.  *See, e.g.*, *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("It is well established that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States, subject to governmental privilege of immunity.").

7

to real property must be brought in federal court. Federal district courts "have <u>exclusive</u> original jurisdiction of civil actions under [28 U.S.C. §] 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346(f) (emphasis added); *see also Cummings v. United States*, 648 F.2d 289, 291 (5th Cir. 1981).[3] Under Title 28 U.S.C. § 1346(f), the state court had no jurisdiction to hear Plaintiff's claim. *See Cummings*, 648 F.2d at 292. As discussed below, the state court's lack of jurisdiction proves significant to this Court's analysis of its own jurisdiction.

## Jurisdiction

When an action is removed to federal court, the district court's jurisdiction has been described as being derived from the state court. *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999). This is referred to as the doctrine of derivative jurisdiction. The doctrine was most famously articulated by Justice Brandeis in *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377 (1922). The posture of that case is similar to that of this case. *See id.* at 382. The United States waived its sovereign immunity under a certain statute but required all suits against it to be brought in federal court. *Id.* The plaintiff brought its claims in state court, and the defendant removed the case to federal court. *Id.* The Supreme Court held that the case should have been dismissed for want of jurisdiction and without prejudice. *Id.* at 383. Justice Brandeis reasoned:

> [a]s the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although

---

[3] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

8

it might in a like suit originally brought there have had jurisdiction.
*Id.* at 382.

The question of whether to apply the doctrine in this case requires close consideration. The doctrine of derivative jurisdiction was, and still deserves to be, the subject of much criticism. It has been described as "an archaic concept that impedes justice," *Welsh v. Cunard Lines, Ltd.*, 595 F. Supp. 844, 846 (D. Ariz. 1984), and a "kind of legal *tour de force* that most laymen cannot understand," *Washington v. Am. League of Prof'l Baseball Clubs*, 460 F.2d 654, 658-59 (9th Cir. 1972). It is also inefficient and does not align with the spirit of the Federal Rules of Civil Procedure, which strive "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In 1986, in response to such criticism, Congress amended the general removal statute by adding a provision which seemed (for a time) to abolish the doctrine of derivative jurisdiction. *See* 28 U.S.C. § 1441(e) (1986). Some courts interpreted the 1986 amendment to mean that derivative jurisdiction no longer applied to all removals under any part of the United States Code. *See e.g.*, *North Dakota v. Fredericks*, 940 F.2d 333, 336-38 (8th Cir. 1991) ("[T]he policy of Congress underlying new § 1441(e) supports the complete abandonment of the derivative-jurisdiction theory, even though the words of the statute clearly do not reach this far."); *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1298 (11th Cir. 2001) (holding 1986 addition of Section 1441(e) by Congress "abrogated the theory of derivative jurisdiction"). Others courts continued to apply the doctrine in cases removed to federal court under sections other than Section 1441, such as the section invoked by HUD in this case. *See, e.g.*, *Palmer v. City Nat'l Bank of W. Va.*, 498 F.3d 236, 245 (4th

9

Cir. 2007) (collecting opinions of the U.S. Court of Appeals for the Fourth Circuit which apply the doctrine in cases removed under Title 28 U.S.C. § 1442).

Congress amended subsection (e) of the general removal statute once again in 2002. First, it re-designated subsection (e) as subsection (f). Second, Congress added the phrase "under this section" to the language which the *Hollis* and *Fredricks* courts construed as abolishing the doctrine of derivative jurisdiction.

After the 2002 amendment, most courts considering the issue have concluded that Congress "chose to make clear that the elimination of derivative jurisdiction was limited to cases removed under Section 1441." *Barnaby v. Quintos*, 410 F. Supp. 2d 142, 145 (S.D.N.Y. 2005); *see also Rodas v. Seidlin*, 656 F.3d 610, 618-19 (7th Cir. 2011) (reasoning the doctrine of derivative jurisdiction "provides a background rule against which all of the removal statutes operate; it applies unless abrogated."); *Palmer*, 498 F.3d at 246 ("Whatever the intent of the 2002 amendment, its result was that § 1441(f) is more clear than former § 1441(e) in abrogating derivative jurisdiction only with respect to removals effectuated under § 1441."); *Elko County Grand Jury v. Siminoe*, 109 F.3d 554, 555 (9th Cir. 1997); *Housing Assistance Corp. of Nassau Cnty. v. Fernandina Beach RRH, Ltd.*, No. 3:08-cv-782-J-32JRK, slip op. at 10-13 (M.D. Fla. Oct. 9, 2008) (Klindt, Mag. J.) (concluding that "Congress intended for the doctrine of derivative jurisdiction to be abolished only in the context of removals under Section 1441"). A small number of other courts acknowledge the 2002 amendment but refuse to apply the doctrine. *See Glorvigen v. Cirrus Design Corp.*, No. 06-2661, 2006 WL 3043222, at *2-3 (D. Minn. Oct. 24, 2006) (refusing to apply the derivative jurisdiction doctrine in a case removed pursuant to 28 U.S.C. § 1442(d)).

The Eleventh Circuit has not directly addressed the vitality of the doctrine of derivative jurisdiction to cases removed under provisions other than Section 1441. The Court's opinion in *Hollis* is not on point because that case was removed under the general removal statute, not Section 1442, and its focus was on venue, which is not a jurisdictional defect. *See* 259 F.3d at 1296-98. It is difficult to square, however, the broad statements made by the Eleventh Circuit in *Hollis* with the 2002 amendment limiting Section 1441(f) to cases "removed under this section." *See, e.g.*, 259 F.3d at 1299 (reasoning that the doctrine of derivative jurisdiction "has been superseded by statute and no longer has any force"). Although the reasoning used by the Eleventh Circuit was accepted by many courts at the time, the weight of authority has shifted away from that position. *See supra* at 10. For these reasons, the Court concludes *Hollis* can be distinguished from this case.

Turning to the removal statutes, this Court finds that the plain language of Section 1441(f) limits the abolition of derivative jurisdiction to cases removed under that section. Because the Eleventh Circuit has yet to interpret Section 1442 "as being anything other than derivative in nature subsequent to the 2002 amendment to Section 1441, the Court ends its inquiry with the plain language of the statute and concludes that Congress intended for the doctrine of derivative jurisdiction to be abolished only in the context of removals under Section 1441." *Housing Assistance Corp. of Nassau Cnty.*, No. 3:08-cv-782-J-32JRK, slip op. at 12-13 (citing *CBS, Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001)).

Thus, because this Court's removal jurisdiction is derived from that of the state court, and that court had no jurisdiction to hear Plaintiff's claims, Plaintiff's Amended Complaint is due to be dismissed for want of jurisdiction.

**CONCLUSION**

In view of the above, Defendant's Motion to Dismiss Amended Complaint (Doc. No. 17) is **GRANTED.**  This case is dismissed without prejudice.  The clerk is directed to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on November 4, 2011.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record